1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RE-SOURCES FOR SUSTAINABLE
COMMUNITIES; A-1 BUILDERS; and all
others similarly situated,

        Plaintiffs,

        v.

BUILDING INDUSTRY ASSOCIATION OF
WASHINGTON, et al.,

        Defendants.

CASE NO. C07-1519RSM

ORDER TO SHOW CAUSE

This matter is before the Court for consideration of two motions filed by plaintiffs: a motion for partial summary judgment, and a motion for class certification. Dkt. ## 28, 29. Before turning to the merits of these motions, the Court must be satisfied that it has jurisdiction over the subject matter of this action. Although defendants have not questioned jurisdiction, it is the Court's obligation to do so where the basis for jurisdiction is not clear from the face of the complaint.

It is a fundamental principle of jurisprudence that federal courts are courts of limited jurisdiction. *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. Thus, it is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Insurance Co. of America,* 511 U.S. 375, 377 (1994) (citations omitted). The basis for federal question jurisdiction must appear on the face of the well-pleaded complaint. *Bell v. Hood*, 327 U.S. 678, 680-82 (1946). The complaint must

ORDER TO SHOW CAUSE - 1

1  establish either that a federal statute creates the cause of action, or that the plaintiff's right to relief

2  necessarily depends on the resolution of a substantial question of federal law.  *Franchise Tax Board v.*

3  *Construction Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983).

4  Plaintiffs have alleged federal question jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §

5  1343(a)(3).  Second Amended Class Action Complaint ("Complaint"), ¶ 16.  In order to state a claim

6  under 42 U.S.C. § 1983, a complaint must allege that (l) the defendants acted under color of state law,

7  and (2) their conduct deprived plaintiff of a constitutional right.  Section l983 is the appropriate avenue to

8  remedy an alleged wrong only if both of these elements are present.  *Haygood v. Younger*, 769 F. 2d

9  l350, l354 (9th Cir. l985) (*en banc*); *cert. denied*, 478 U.S. 1020 (l986).  Section 1983 of itself creates no

10  substantive rights, but only provides a means of enforcing federal rights that have been conferred

11  elsewhere.  *Graham v. Connor,*  490 U.S. 386, 394 (1989).

12  Title 28, Section 1343 states, in relevant part,

13  (a) The district courts shall have original jurisdiction of any civil action authorized by law to be
   commenced by any person:

14  . . . .

15  (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation,
   custom or usage, of any right, privilege or immunity secured by the Constitution of the

16  United States or by any Act of Congress providing for equal rights of citizens or of all
   persons within the jurisdiction of the United States.

17

18  28 U.S.C. § 1343(a)(3).  Thus, both statutes under which plaintiffs assert jurisdiction require that the

19  defendants act under color of state law.  In addition to actual state officials and employees, the law

20  reaches those who "who carry a badge of authority of a State and represent it in some capacity, whether

21  they act in accordance with their authority or misuse it."  *Monroe v. Pape*, 365 U.S. 176, 172 (1961).

22  The class action complaint here arises from a program established by the Washington State

23  Department of Labor and Industries ("L & I") to encourage workplace safety through the use of premium

24  refunds for those industries in which a good safety record is established.  The program is described as

25  retrospective rating ("Retro"), and is established by statute.  RCW 51.18.010.  The implementing rules

26  are found in the Washington Administrative Code (WAC"), chapter 296-17.  The introductory section

27  states,

28  **What is retrospective rating?**  Retro is a voluntary financial incentive workers'
   compensation insurance program offered by L & I [Labor and Industries].  Retro is

ORDER TO SHOW CAUSE - 2

designed to reward employers participating in the program that are able to keep their claim costs below the preselected level they have chosen.  Reductions in claim costs are the result of improvements in workplace safety and injured worker outcomes.

**What is the reward?**  Participating employers who are successful may be refunded a portion of the premiums they paid to L & I.

**Are there any fees** involved?  L & I does not charge fees for this program.

**Who can participate?**  Any employer that insures their workers' compensation insurance obligations with L & I and meets the requirements contained in the retro rules can participate in retro.

WAC 297-17-90401 (notes omitted).

An employer may choose to participate individually, or as part of a "retro group" WAC 296-17-90404.  A retro group may be sponsored by an organized association with dues-paying members and an L & I industrial insurance account in good standing.  WAC 296-17-90409.  It must provide L & I with copies of the association's articles of incorporation and bylaws, and must submit a written plan for workplace safety and accident prevention to L & I.  *Id*.  The association must be formed for purposes other than obtaining or offering insurance coverage, or sponsoring a retro group (this will be verified by examination of the articles of incorporation and bylaws).  *Id*.  The retro group must be made up of employer members who are engaged in substantially similar business operations.  WAC 296-17-90421.  Organizations that sponsor retro groups may charge their members a fee for their services.  WAC 296-17-90401, note.  These fees "are not a requirement of L & I nor are they regulated by L & I."  *Id*.

The named plaintiffs here are employers engaged in the building trades.  Complaint, ¶¶ 6, 7. The defendants include Building Industry Association of Washington ("BIAW"), a trade association incorporated as a nonprofit corporation; the BIAW Member Services Corporation, a for-profit corporation; the Washington Builders Benefits Trust, an unincorporated entity formed by the BIAW; Master Builders of King and Snohomish County, a nonprofit corporation; various named individuals who are current or former trustees of the Builders Benefits Trust, and numerous unnamed Doe defendants. Complaint, ¶¶ 8-13.

Plaintiffs allege that they are members of a retro group sponsored by BIAW.  Complaint, ¶ 1. They assert that over the past six years, BIAW has returned only 80%, instead of 100%, of the retro refunds from L & I to the member employers.  While they have asserted various state law claims against

ORDER TO SHOW CAUSE - 3

BIAW based on this practice, their federal claim involves an alleged constitutional violation.  Plaintiffs contend that BIAW's use of a portion of the withheld refunds for political purposes, such as lobbying, support for ballot campaigns, and political expenditures, violates their First Amendment rights. Complaint, ¶ 36.   However, plaintiffs have not alleged that any of the named defendants are state actors amenable to suit under § 1983 or 18 U.S.C. § 1343(a)(3), nor have their actions been taken "under color of state law."

Plaintiffs' suit is analogous to similar suits filed by members of labor unions or state bar associations regarding use of mandatory dues for political purposes.  Such suits have led to the so-called "Keller deduction" for members of the Washington State Bar Association, as well as other state bar associations. *Keller v. State Bar of California*, 496 U.S. 1 (1990).   They have also led to the development of procedures whereby a union member of a "closed" shop may avoid a certain portion of dues by becoming a dues objector; the supreme Court eventually ruled that dues must be separated into "germane" and "non-germane" expenditures, so that dissenting members need not pay that portion of dues used for political purposes.  *Railway Employees' Department v. Hanson*, 351 U.S. 225 (1956); *International Association of Machinists v. Street*, 367 U.S. 740 (1961); *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977).   Each of these cases, in which the plaintiffs complained of First Amendment violations by the named defendants, originated in state court and eventually made its way to the United States Supreme Court under jurisdiction provided by 28 U.S.C. § 1257.   There was no original jurisdiction in the district court under § 1983, as the defendants were not state actors.[1]

As set forth above, the regulations here state that participation in the retro program by an employer is voluntary.  WAC 296-17-90401.  An employer may participate either as an individual or through an association that sponsors a retro group.  WAC 296-17-90404.  Membership in the association that sponsors a retro group is voluntary, and an employer may have a choice of several associations to join.  Nothing in the regulations compels an employer to join a particular association or even to join any association for the purpose of obtaining a retro refund.  Employers are encouraged to

---

[1] By contrast, in *Chicago Teachers' Union v. Hudson*, 475 U.S. 292 (1986), the plaintiffs challenged the constitutionality of a school code, naming the union, its officers and board members as defendants for acting under color of law in enforcing the alleged unconstitutional section.  Plaintiffs here are not challenging the constitutionality of the WAC regulations.

1   contact various organizations sponsoring retro groups to determine what their requirements are.  WAC

2   296-17-90405.  The regulation clearly states that the organization may have requirements in addition to

3   those listed by L & I.  *Id*.  Further, the introductory regulation states that "organizations that sponsor

4   retro groups can and often do charge their members fees for their services."  WAC 296-17-90401.

5   However, the fees are not regulated by L & I.  *Id*.  Further, L & I specifically disclaims "any interest in

6   any contracts executed between a sponsoring organization and their participating group members. "

7   WAC 296-27-90490.

8          Thus, the regulations do not in any way control or direct the financial and administrative decisions

9   of the organizations which sponsor retro groups.  The Court cannot find, in these discretionary acts of the

10  association or its directors, any action under color of state law so as to subject these defendants to

11  liability under either 42 U.S.C. § 1983 or 28 U.S.C. § 1343.  Accordingly, plaintiffs are ORDERED TO

12  SHOW CAUSE on or before March 28, 2008, why this action should not be dismissed for lack of subject

13  matter jurisdiction.  Such dismissal would be without prejudice to filing in state court.

14         DATED this 18  Day of March 2008.

15

16                                    RICARDO S. MARTINEZ
                                      UNITED STATES DISTRICT JUDGE
17

18

19

20

21

22

23

24

25

26

27

28

ORDER TO SHOW CAUSE - 5